**Layton P. HOOD, Donnie Hyder and Rebecca Hyder, Plaintiffs-Appellants,**

v.

**John ADAMS, Paul Drake, Paul A. Granger, Leonard Gardner, Herbert L. Cross, Stanley P. Jenson, Tengo Oil Company, Leonard Gardner, Patricia Kerley, E. F. Drake, Ronald Harris, James W. Irwin and Mary Irwin, Onie E. Duffer, the Andrew Corporation, Elden L. Staller, Carl W. Vail, David Schoenfield, Donald Brooks, Russell L. Marcanio, Charles Esposito, Donald E. Webber, Edward O. Johnson, Jack W. Holtz, Sr., Ron Neunlist, and South Kentucky Purchasing Company, Inc., Defendants-Appellants,**

**and**

**Elbert Taylor and Ella Taylor, Intervening Petitioners-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Feb. 5, 1981.

Certiorari Denied by Supreme Court April 27, 1981.

John E. Appman, Jamestown, for plaintiffs-appellants.

Robert T. Beaty, Oneida, for defendants-appellants.

Hollis A. Neal, Neal, Craven & Romer, Jamestown, for intervening petitioners-appellees.

OPINION

LEWIS, Judge.

This suit originated as an action by the original lessors (Donnie Hyder and wife Rebecca Hyder) and the original lessee appellant Layton P. Hood against the assignees of the lease, some of whom are appellants herein. While suit was pending, foreclosure proceedings were instituted against the Hyders, and appellees purchased the property in question at the foreclosure sale. Subsequently, appellees filed their petition to intervene in the instant suit, seeking to terminate the "oil and gas lease" on their property. After an evidentiary hearing the Chancellor entered a decree cancelling the lease and removing it as a cloud on appellees' title.

Appellants have appealed and present for our consideration four issues, as follows:

1. The Chancellor erred in holding that the Oil and Gas Lease from Donnie Hyder and wife, Rebecca Hyder to Layton P. Hood, dated February 20, 1974, was void for the reason that the lease was for a primary term of ten (10) years and was to be earned by the lessee commencing a well on or before 90 working days from the date of the lease, which was done.

2. The Chancellor erred in holding that the consideration for the lease in question was nominal and that it was apparent that the principle [sic] consideration for the lease was the undertaking of the lessee to act with promptness and diligence in drilling wells for the discovery and production of oil and gas for the reason that the lease provided that the lessee had to commence a well within 90 working days, which was done at considerable expense.

3. The Chancellor erred in holding that there was no showing of any effort being made for future work on the well since his own Clerk and Master was the receiver for the well and that there was no dispute to the fact that there was oil in storage tanks at the time of the hearing in this cause.

4. The Chancellor erred in holding that there was no probability of further production.

We discuss these issues together.

The lease in the case at bar is identical, except as hereafter noted, to the lease construed in *Waddle v. Lucky Strike Oil Co.*, 551 S.W.2d 323 (Tenn.1977). The lease, in *Waddle*, provided that it would terminate unless the lessee began drilling operations within six months or paid a seventy-five dollar per annum delay rental and, once a well was drilled, if production ceased for any cause the lease would not terminate provided a new well was commenced or the seventy-five dollar delay rental was paid by the next rental paying date. The lease in the instant case differs from the lease in *Waddle* only in that the provision for the payment of delay rental and defining the rental payment period as one year was deleted. The result of this deletion is that the subsequent references to rent and to the rental payment period are ambiguous.

In *Waddle*, the lessee drilled an apparently productive well that was "red tagged" by the Tennessee Oil and Gas Board. The red-tagging of the well effectively took it out of production. The lessee's assignee, in *Waddle*, sought a declaratory judgment that the lease was in full force and effect. The Chancellor denied the relief sought. This Court reversed the Chancellor, the Supreme Court granted certiorari and, in upholding the Chancellor, stated that "production" in an oil and gas lease meant "production in paying quantities," 551 S.W.2d at 326, and that if a dry hole was drilled or the well was "red tagged," the lessee was obligated to (1) commence drilling another well, (2) pay delay rental, or (3) bring the "red-tagged" well into paying production. The lessee's failure to do any of these or to show a good faith effort to do so caused the lease to terminate.

In *Waddle*, the lessor was paid a $1500 cash bonus for signing the lease with a provision for a seventy-five dollar per annum delay rental. The lessor in the case at bar was paid a one dollar cash bonus with no provision for delay rental. The primary term in each of the leases was ten years.

The lease in the instant case provided that if operations for drilling the well were not commenced within ninety working days the lease would terminate. A well was commenced within ninety working days. The lease also contained the following provision:

> If at any time prior to the discovery of oil or gas on this land and during the term of this lease, the lessee shall drill a dry hole, or holes, on this land, this lease shall not terminate, provided operations for the drilling of a well shall be commenced by the next ensuing rental paying date, or provided the lessee begins or resumes the payment of rentals in the manner and amount above herein provided and in this event the preceding paragraphs thereof governing the payment of rentals and the manner and effect thereof shall continue in force.

This provision provides that the lease will not terminate provided the lessee drills a new well or pays delay rental before the next rental period. However, as we have noted, the rental period and the payment of delay rental were deleted resulting in ambiguity in the lease. This provision is also analogous to the language construed in *Waddle* except that it refers to dry wells rather than a cessation of production from other causes. The Court, in *Waddle*, stated that the productive red-tagged well was to be treated under the dry-well provisions of the lease because it had not actually produced. 551 S.W.2d at 326.

The instant lease also contains the following provision:

> TO HAVE AND TO HOLD the same for a term of ten (10) years from this date, hereinafter referred to as the primary term, and as long thereafter as oil or gas, casinghead gas, or either of them, is produced therefrom, or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom.

Appellants contend that when the language concerning rent payment period and delay rental was deleted it became necessary only that they drill within ninety days and it made no difference even "if there had been a dry hole commenced within 90 days that the lessee would have earned a lease for a period of ten (10) years." In other words, it is their insistence that once they drilled within the ninety-day period, they had a lease that would not terminate for the ten-year primary period. We disagree.

> ... [I]nstruments of this character [oil and gas leases] are construed most favorably to development, ... time is the essence of the contract, and the real motive for the giving of such instruments is the development of the leased property. Therefore such a lease or option is properly construed strongly against the lessee, so as to secure such speedy development.

551 S.W.2d at 326 (*quoting Lanham v. Jones*, 84 Colo. 129, 268 P. 521 (1928).

Reading the lease as a whole, as we must do, it is clear from the one dollar nominal consideration that, as the Chancellor found, "the principal consideration for the lease was the undertaking of the lessee to act with promptness and diligence in drilling wells for the discovery and production of oil and gas."

The evidence in the case at bar is, and the Chancellor so found:

> A well was drilled and a small amount of oil was found. There was some production up to January 30, 1978, but no production since that time. The proof does not indicate any probability of further production nor is there a showing of any effort being made for future work on the well, or that other wells will be drilled on the premises.

While appellants allege that the Chancellor erred in these findings, they have failed to point out any proof in the record in derogation of the Chancellor's findings, and our review of the record fails to disclose any.

█ Our research discloses that oil and gas leases are generally of two types, "or" and "unless." In an "or" lease, the lessee must drill *or* pay rent. There is no provision for an automatic termination. In an "unless" lease, if the lessee fails to begin or complete drilling within the specified time the lease terminates *unless* a stipulated rental is paid to the lessor. 58 C.J.S. *Mines and Minerals* § 203 (Oil and Gas Leases). The instant lease, in its original format, appears to have been a standard "unless" lease. However, the provisions concerning rental payments were deleted while the termination clauses were retained. The lessee in the instant lease was obligated to drill within ninety days. By the deletion of the rental period and delay rental payments, the lessee attempted to create in himself an option to drill or not to drill as the lessee chose. Where a purported oil and gas lease creates an option with no obligation on the supposed lessee either to drill or to pay rent, the lease is terminable by either party in the absence of intervening equities. *Lanham v. Jones*, 84 Colo. 129, 268 P. 521 (1928); see also, 58 C.J.S. *Mines and Minerals* § 203.

█ The lessee under the instant lease was obligated to drill a well within ninety days. The lessee drilled a non-productive well and thereafter the lease created an option in the lessee to drill or not as the lessee chose. *A review of this record fails to disclose intervening equities and we, therefore, find that the lease was terminable by either of the parties.*

The judgment of the Chancellor is affirmed with costs to appellants. The case is remanded to the Chancery Court for collection of costs and any further necessary proceedings.

TODD, P. J. M. S., and CANTRELL, J., concur.